**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------------x
                                        :
In re:                                  :  Chapter 11
                                        :
Velti Inc., et al.,[1]                  :  Case No. 13-12878 (PJW)
                                        :
                                        :  (Jointly Administered)
                                        :
              Debtors.                  :
                                        :  Re: Docket No. 9
------------------------------------------------------------x
```

**INTERIM ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363(c), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) AND 507 AND BANKRUPTCY RULES 2002, 4001 AND 9014 (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL AND (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS**

Upon the motion, dated November 4, 2013 (the "Motion"), of the above-captioned debtors and debtors in possession (collectively, the "Debtors") in the above-captioned cases (the "Cases") for interim and final orders under Sections 105, 361, 362, 363(c), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (this "Court") (as amended, the "Local Rules") seeking:

(I)    authorization for (a) the Debtors to obtain up to the principal amount of

---

[1] The Debtors are the following six entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Velti Inc. (4475), Air2Web, Inc. (5572), Air2Web Interactive, Inc. (2364), Velti North America, Inc. (8900), Velti North America Holdings, Inc. (3953) and Velti US Holdings, Inc. (8299). The mailing address of each of the Debtors, solely for purposes of notices and communications, is Spear Tower, 1 Market Street Suite 1400, San Francisco, California 94105.

$25,000,000 of postpetition financing, plus fees to be paid in kind,[2] consisting of (i) term loans in the aggregate principal amount of at least $10,000,000 of new money (the "DIP Term Loan"), and (ii) subject to entry of the Final Order (as defined below), $15,000,000 of aggregate principal amount of loans outstanding under the Prepetition Credit Agreement (as defined below), which shall have the liens and priorities set forth herein (such loans, the "Priority Loans"; together with the DIP Term Loan and the additional loans deemed made in payment of the PIK Fees, the "DIP Loans" and the lenders with respect thereto, the "DIP Lenders"), on the terms and conditions set forth in this interim order (this "Order") and the Debtor-in-Possession Loan Agreement (substantially in the form annexed to the Motion as Exhibit A, and as hereafter amended, supplemented or otherwise modified from time to time, the "DIP Agreement"[3]; together with all agreements, documents and instruments executed and delivered in connection therewith, as hereafter amended, supplemented or otherwise modified from time to time, the "DIP Documents"), among Velti, Inc. and Air2Web, Inc. (collectively, the "Debtor Borrowers"), Velti Limited, Velti DR Limited, and Mobile Interactive Group Limited, each a private limited company organized under the laws of England and Wales (together with Velti Limited and Velti DR Limited, the "Non-Debtor Borrowers" and, together with the Debtor Borrowers, the "Borrowers"), and each of the Borrowers' affiliates that is a Debtor (other than the Borrowers) as guarantors (the "Guarantors"; and together with the Borrowers, the "DIP Loan Parties"), and Velti plc, a company formed under the laws

---

[2]  Fees in the aggregate amount of $1,250,000 shall be paid in kind ("PIK Fees") and added to the outstanding principal of the DIP Loans, which shall be deemed as additional loans as provided in the DIP Agreement, for an aggregate facility of $26,250,000.

[3]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the DIP Agreement.

of the Bailiwick of Jersey, Channel Islands ("Parent") for the limited purposes set forth

therein and U.S. Bank, National Association, as administrative agent (in such capacity,

the "DIP Agent");

      (II)    authorization for the Debtors to execute and deliver the DIP Agreement

and the other DIP Documents and to perform such other and further acts as may be

necessary or appropriate in connection therewith;

      (III)    authorization for the Debtors to (a) use the Cash Collateral (as defined in

paragraph 15 below) pursuant to Section 363 of the Bankruptcy Code, and all other

Prepetition Collateral (as defined in paragraph 4(c) below), and (b) provide adequate

protection to the lenders (collectively, the "Prepetition Lenders") under the Credit

Agreement, dated as of August 10, 2012 (as amended, supplemented or otherwise

modified from time to time, the "Prepetition Credit Agreement"; and together with all

security, pledge and guaranty agreements and all other documentation executed in

connection with any of the foregoing, each as amended, supplemented or otherwise

modified, the "Prepetition Documents"), by and among Velti Inc., Velti plc, Mobile

Interactive Group Limited and Velti Mobile Platforms Limited, as borrowers, the lenders

from time to time parties thereto and HSBC Bank USA, National Association, as

administrative agent and syndication agent (together with any successor appointed

hereafter as administrative agent, the "Prepetition Agent");

      (IV)    authorization for the DIP Agent and the DIP Lenders to exercise remedies

under the DIP Documents upon the occurrence and during the continuance of an Event of

Default;

      (V)    subject to entry of the Final Order, authorization to grant liens to the DIP

Lenders and the Prepetition Lenders on the proceeds of the Debtors' claims and causes of action (but not on the actual claims and causes of action) arising under Sections 544, 545, 547, 548 and 550 of the Bankruptcy Code (collectively, the "Avoidance Actions");

(VI)    subject to entry of the Final Order, the waiver by the Debtors of any right to seek to surcharge against the DIP Collateral (as defined in paragraph 9 below) or the Prepetition Collateral pursuant to Section 506(c) of the Bankruptcy Code;

(VII)    at an interim hearing (the "Interim Hearing") on the Motion before this Court, pursuant to Bankruptcy Rule 4001, entry of this Order (a) authorizing the Debtor Borrowers to borrow and be jointly and severally obligated under the DIP Agreement in an aggregate principal amount not to exceed $2,158,000 plus any fees and expenses of the advisors to the DIP Agent and the DIP Lenders prior to the entry of the Final Order, (b) authorizing the Debtor Borrowers to be jointly and severally obligated for the principal amount not to exceed $4,168,000 to be borrowed by the Non-Debtor Borrowers prior to the entry of the Final Order,[4] (c) authorizing the Debtor Borrowers to pay the PIK Fees  (which shall be incremental to the amounts authorized in the foregoing clauses (a) and (b)) by adding the entire amount thereof as DIP Loans, (d) authorizing the Guarantors to unconditionally guaranty all of the obligations outstanding under the DIP Agreement, (e) authorizing the Debtors to use the Cash Collateral and the other Prepetition Collateral, and (f) granting adequate protection to the Prepetition Lenders; and

(VIII)   to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") for this Court to consider entry of a final order in form and substance

---

[4]    The Non-Debtor Borrowers are jointly and severally obligated on all DIP Term Loans borrowed by the Debtors Borrowers and with respect to the PIK Fees.

reasonably satisfactory to the DIP Agent and the Lead Lender (the "Final Order") authorizing and approving on a final basis the relief requested in the Motion, including without limitation, for the Debtor Borrowers on a final basis to utilize and be jointly and severally obligated for all amounts under the DIP Documents, including without limitation, with respect to the Priority Loans and the PIK Fees, and for the Debtors to continue to use the Cash Collateral and the other Prepetition Collateral subject to the terms of the DIP Documents and the Final Order.

The Interim Hearing having been held by this Court on November 5, 2013, and upon the record made by the Debtors at the Interim Hearing, including, without limitation, the admission into evidence of the *Declaration of Jeffrey Ross in Support of First Day Pleadings*, filed on the Petition Date (as defined below), and the other evidence submitted or adduced and the arguments of counsel made at the Interim Hearing and all objections to the entry of this Order having been overruled, withdrawn or resolved pursuant to the terms of this Order, and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      *Jurisdiction.* This Court has core jurisdiction over the Cases, the Debtors, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      *Notice.* Notice of the Motion, the relief requested therein and the Interim Hearing was served by the Debtors on (i) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"); (ii) the Debtors' twenty largest unsecured creditors on a consolidated basis; (iii) counsel to the Prepetition Agent; (iv) counsel to the DIP Agent; (v) counsel to the DIP Lenders; (vi) the United States Attorney's Office for the District of Delaware;

(vii) the Internal Revenue Service; (viii) the Securities and Exchange Commission; (ix) all non-Debtor subsidiaries of the Parent; and (x) all other parties required to receive service under Local Rule 2002-1(b) (collectively, the "Notice Parties"). Under the circumstances, the notice provided of the Motion and the Interim Hearing is sufficient and adequate notice and that no further notice of the relief sought at the Interim Hearing is necessary or required.

3.      *Approval of Motion.* The relief requested in the Motion is granted on an interim basis as described herein. Except as otherwise expressly provided in this Order, any objection to the entry of this Order that has not been withdrawn, waived, resolved or settled, is hereby denied and overruled on the merits.

4.      *Debtors' Stipulations.* Without prejudice to the rights of any non-Debtor party-in-interest other than the Parent and its subsidiaries (but subject to the limitations thereon contained in paragraphs 19 and 20), the Debtors admit, stipulate, and agree that:

(a)      as of November 4, 2013 (the "Petition Date"), the Loan Parties (as defined in the Prepetition Credit Agreement, the "Loan Parties") were truly and justly indebted to the Prepetition Lenders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $56,353,836.81 in respect of loans and other extensions of credit made pursuant to the Prepetition Documents, plus accrued and unpaid interest thereon and all fees accrued thereunder and all other fees and expenses (including fees and expenses of attorneys and advisors) as provided in the Prepetition Documents (collectively with the Loan Document Obligations (as defined in the Guarantee and Collateral Agreement), the "Prepetition Obligations");

(b)      the Prepetition Obligations in the full amount outstanding on the Petition Date constitute the legal, valid and binding obligations of the Loan Parties, enforceable in

accordance with their terms; provided that, subject to entry of the Final Order, notwithstanding the incurrence of the DIP Loans, the Priority Loans shall be given the rights and priorities set forth herein and in the DIP Documents with respect to the Debtors;

(c)    the liens and security interests granted by the Loan Parties to the Prepetition Agent (for the benefit of the Prepetition Lenders and the other Secured Parties referenced in the Prepetition Documents) to secure the Prepetition Obligations (the "Prepetition Liens") are (i) valid, binding, perfected, enforceable, first priority (subject to permitted exceptions under the Prepetition Credit Agreement) liens on and security interests in the personal and real property of such Loan Parties constituting "Collateral" under, and as defined in, the Prepetition Credit Agreement (together with the Cash Collateral, the "Prepetition Collateral"), (ii) not subject to objection, defense, contest, avoidance, reduction, disallowance or subordination (whether equitable, contractual or otherwise) of any kind pursuant to the Bankruptcy Code or applicable nonbankruptcy law by any person or entity and (iii) subject and subordinate only to (A) after giving effect to this Order, the Carve-Out (as defined in paragraph 8(b) below) and the liens and security interests granted to secure the DIP Obligations (as defined below) and the Adequate Protection Obligations (as defined in paragraph 16 below) and (B) other valid and unavoidable liens perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by Section 546(b) of the Bankruptcy Code) which are permitted under the Prepetition Documents to the extent such permitted liens are senior to the liens securing the Prepetition Obligations;

(d)    no portion of the Prepetition Obligations and no amounts paid at any time to the Prepetition Agent or any Prepetition Lender on account thereof or with respect thereto shall be subject to objection, defense, counterclaim, claim (as such term is defined in the

Bankruptcy Code), offset, contest, avoidance, recharacterization, reduction, disallowance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and

(e)   no claims, objections, challenges, counterclaims, causes of action and/or choses in action, defenses or setoff rights of any Loan Party exist against any Prepetition Lender or the Prepetition Agent and their respective Prepetition Obligations and Prepetition Liens under any contract or tort (including, without limitation, lender liability) theories of recovery, whether arising at law or in equity, including any recharacterization, subordination, avoidance or other claim arising under or pursuant to Section 105 or Chapter 5 (including, without limitation, Sections 510, 544, 547, 548 or 550) of the Bankruptcy Code or under any other similar provisions of applicable state or federal law, and to the extent any claims, objections, challenges, counterclaims, causes of action and/or choses in action, defense or setoff rights are deemed to have existed as to any of the foregoing, the Debtors hereby forever waive, discharge and release any right they may have to challenge any of the Prepetition Obligations and the Prepetition Liens, and to assert any setoff rights, defenses, claims, objections, challenges, counterclaims, causes of action and/or choses of action whether arising under the Bankruptcy Code or applicable nonbankruptcy law, against the Prepetition Agent and the Prepetition Lenders (only in their capacities as such), and as to each of the foregoing, their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys and advisors, in each case in connection with any matter related to the Prepetition Obligations, the Prepetition Liens, the Prepetition Credit Agreement and the Prepetition Documents or the financing and transactions contemplated thereby, or the Prepetition Collateral.

5.      *Findings Regarding the DIP Loans, the Use of Cash Collateral and the*

*Prepetition Collateral.*

(a)     Good cause has been shown for the entry of this Order.

(b)     The Borrowers require the DIP Term Loans and the Debtors need to continue to use the Prepetition Collateral, including the Cash Collateral, in order to, among other things, permit the orderly continuation of their businesses, fund their ongoing global operations, maintain and generate the confidence of customers, vendors and employees and provide a bridge to the closing of the MMBU Sale.[5]

(c)     The Borrowers are unable to obtain financing on more favorable terms from sources other than the DIP Lenders pursuant to, and for the purposes set forth in, the DIP Documents and are unable to obtain adequate unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit allowable under Sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without granting priming liens under Section 364(d)(1) of the Bankruptcy Code and the Superpriority Claims (as defined in paragraph 8(a) below) on the terms and conditions set forth in this Order and the DIP Documents.

(d)     The terms of the use of the DIP Term Loans and the Prepetition Collateral, including the Cash Collateral, pursuant to this Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute

---

[5]     As defined in the *Motion of the MMBU Debtors and Debtors in Possession Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code (I)(A) Approving Bidding Procedures In Connection With The Sale Of Substantially All Of The MMBU Debtors' Assets, Including As Related To The MMBU Business; (B) Approving Stalking Horse Purchaser And Expense Reimbursement; (C) Scheduling The Related Auction And Hearing To Consider Approval Of Sale; (D) Approving Procedures Related To The Assumption Of Certain Executory Contracts And Unexpired Leases; (E) Approving The Form And Manner Of Notice Thereof; And (F) Granting Related Relief; And (ii)(A) Authorizing The Sale Of Substantially All Of The MMBU Debtors' Assets, Including As Related To The MMBU Business Pursuant To Successful Bidder's Asset Purchase Agreement Free And Clear Of Liens, Claims, Encumbrances, And Other Interests; (B) Approving The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases Related Thereto; And (C) Granting Related Relief,* dated November 4, 2013 (the "Bid Procedures Motion") [Docket No. 10].

reasonably equivalent value and fair consideration.

(e)    The DIP Documents and the use of the Prepetition Collateral, including the Cash Collateral, have been the subject of extensive negotiations conducted in good faith and at arm's length among the DIP Loan Parties, the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders, and all of the DIP Loan Parties' obligations and indebtedness arising under or in connection with the DIP Documents and this Order (collectively, the "DIP Obligations") shall be deemed to have been extended by the DIP Lenders in "good faith" as such term is used in Sections 363(m) and 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of Sections 363(m) and 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified on appeal or otherwise.

(f)    Absent granting the relief set forth in this Order, the DIP Loan Parties and their business operations will be immediately and irreparably harmed.  In particular, the DIP Loan Parties require immediate postpetition financing, and continued use of the Prepetition Collateral, including the Cash Collateral, in order to, among other things, permit the orderly continuation of their businesses, maintain and generate the confidence of customers, vendors and employees and preserve the going concern value of the DIP Loan Parties, including the Debtors' estates.  The borrowing of the DIP Term Loans and the use of the Prepetition Collateral, including the Cash Collateral, in accordance with this Order and the DIP Documents are, therefore, in the best interest of the DIP Loan Parties.

(g)    Nothing herein or in the DIP Documents modifies or impacts the obligations of the Loan Parties under the Prepetition Documents.

(h)    The Debtors are jointly and severally liable for the Non-Debtor

Borrowers' obligations under the DIP Documents because, among other reasons, (i) the Debtors and the Non-Debtor Borrowers constitute an integrated, worldwide business, (ii) the joint and several nature of the DIP Agreement is substantially similar to the joint and several nature of the Prepetition Credit Facility, and (iii) the Non-Debtor Borrowers will be jointly and severally liable for the DIP Term Loans and continue to be jointly and severally liable for all of the Prepetition Obligations outstanding on the Petition Date.

6.      *Authorization of the DIP Loans and the DIP Documents.*

(a)      The Debtor Borrowers are hereby authorized (i) to borrow and be jointly and severally obligated under the DIP Agreement in an aggregate principal amount not to exceed $2,158,000 plus any fees and expenses of the advisors to the DIP Agent and the DIP Lenders prior to the entry of the Final Order, (ii) to be jointly and severally obligated for the principal amount not to exceed $4,168,000 to be borrowed by the Non-Debtor Borrowers prior to the entry of the Final Order, and (iii) to pay the PIK Fees (which shall be incremental to the amounts authorized in the foregoing clauses (i) and (ii)) by adding the entire amount thereof as a DIP Loan, in the case of the foregoing clauses (i) and (ii) for working capital and other general corporate purposes of the Debtors, subject to the terms of the DIP Documents and the Budget; provided that nothing in this Order shall be deemed to authorize the incurrence of any Priority Loan.

(b)      In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and directed to perform all acts (and to the extent such acts have already occurred, such acts are hereby ratified) and to execute and deliver all instruments and documents that the DIP Lenders determine to be reasonably required or necessary for the DIP Loan Parties' performance of their obligations under the DIP Documents, including without

limitation:

      (i)     the execution, delivery and performance of the DIP Documents;

      (ii)     the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case in accordance with the terms of the DIP Documents and in such form as the DIP Loan Parties and the DIP Lenders may agree, and no further approval of this Court shall be required for any amendment, waiver, consent or other modification to and under the DIP Documents that do not materially and adversely affect the Debtors or which do not (A) shorten the maturity of the DIP Loans, (B) increase the principal amount of, or the rate of interest payable on, the DIP Loans, or (C) change any Event of Default, add any covenants or amend the covenants therein, in any such case to be materially more restrictive on the DIP Loan Parties; provided, however, that a copy of any such amendment, waiver, consent or other modification shall be filed by the Debtors with this Court and served by the Debtors on the U.S. Trustee and counsel to the statutory committee of unsecured creditors, if any (the "Committee");

      (iii)     the non-refundable payment to the DIP Agent and the DIP Lenders, as the case may be, of the fees set forth in the DIP Documents, including without limitation the PIK Fees or any administrative agency or other fee, and referred to in one or more fee letters executed among the Debtors and the DIP Agent or the DIP Lenders and reasonable costs and expenses as may be due from time to time as provided in this Order, including, without limitation, reasonable financial advisor fees, attorneys' fees and other professional fees and

disbursements as provided in the DIP Documents;

     (iv)    depositing into an account designated by the DIP Lenders a retainer an amount not less than $250,000 for the payment of the DIP Lenders' reasonable fees and expenses of counsel incurred in connection with the DIP Documents or the MMBU Sale[6] (which amount may be debited from time to time at the discretion of the DIP Lenders or their counsel, and it being understood that such retainer shall not be deemed a limit or cap on the DIP Lenders' fees and expenses);

     (v)    depositing into an account designated by the DIP Lenders a retainer an amount not less than $75,000 for the payment of the DIP Lenders' reasonable fees and expenses of their financial advisor incurred in connection with the DIP Documents or the MMBU Sale[7] (which amount may be debited from time to time at the discretion of the DIP Lenders or their financial advisor, and it being understood that such retainer shall not be deemed a limit or cap on the DIP Lenders' fees and expenses);

     (vi)    making any payments in respect of Adequate Protection Obligations as provided for in this Order and the DIP Agreement; and

     (vii)    the performance of all other acts required under or in connection with the DIP Documents.

     (c)    The DIP Documents constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with the terms of this Order and the DIP

---

[6]    As defined in the DIP Agreement.

[7]    As defined in the DIP Agreement.

Documents.  No obligation, payment, transfer or grant of security by the Debtors under the DIP

Documents or this Order shall be voidable, avoidable or recoverable under the Bankruptcy Code

or under any applicable nonbankruptcy law (including without limitation, under Sections 502(d)

or 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act,

Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any

defense, reduction, setoff, recoupment or counterclaim.

      7.     *Budget*.  Attached as Exhibit A hereto and incorporated by reference herein is the

4-week budget (which has been approved by the DIP Lenders and the Prepetition Lenders)

setting forth the Debtors' projected receipts and disbursements for such period (the "Budget").

The Debtors' use of Cash Collateral shall be consistent with the types of expenses set forth in the

Budget and subject to the requirements set forth in the DIP Documents.  The DIP Lenders and

the Prepetition Lenders shall have no obligation with respect to the Debtors' use of the Cash

Collateral, and shall not be obligated to ensure or monitor the Debtors' compliance with the

Budget or to pay (directly or indirectly from the Cash Collateral) any expenses incurred or

authorized to be incurred pursuant to the Budget.  Any and all Cash Collateral shall be used by

the Debtors in accordance with this Order, the Budget and the DIP Credit Agreement.  The DIP

Lenders' and the Prepetition Lenders' consent to the Budget shall not be construed as consent to

the use of any Cash Collateral after the occurrence of an Event of Default (other than with

respect to the Carve-Out), regardless of whether the aggregate funds shown on the Budget have

been expended.  Notwithstanding anything to the contrary contained herein, no payment shall be

made to any professional retained pursuant to the Bankruptcy Code (each, a "Professional") to

the extent that it would cause the aggregate amount paid to such Professional to exceed the

aggregate amount of fees and expenses set forth in the Budget (subject to variances permitted by

the DIP Lenders) with respect to such Professional through the end of the applicable period for which payment is being requested (the "Budgeted Fees and Expenses"), it being understood that amounts unpaid as a result of the preceding limitation may be accrued and, subject to an order of this Court establish procedures for the compensation of Professionals, paid in any subsequent period(s) to the extent that actual fees and expenses incurred in such subsequent period(s) are less than the Budgeted Fees and Expenses in such subsequent period(s); provided, however, that nothing in this Order shall limit any Professional's right to request, or the Court's power to authorize, the allowance of fees and expenses pursuant to Sections 330 and 331 of the Bankruptcy Code.  Each Loan Party (as defined in the Prepetition Credit Agreement) that that collects payments on account of receivables related to services or products provided by an MMBU Entity, or that are otherwise collected on behalf of an MMBU Entity, shall promptly remit such payments as and when received by such non-MMBU Entity to the applicable MMBU Entity.

8. *Superpriority Claims.*

(a)    Except to the extent expressly set forth in this Order in respect of the Carve-Out, pursuant to Section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute joint and several allowed senior administrative expense claims (the "Superpriority Claims") against each Debtor with priority over any and all administrative expenses, adequate protection claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in Sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under Sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such

expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment.

(b)     For purposes hereof, the "Carve-Out" shall mean (a) any fees payable to (i) the Clerk of the Bankruptcy Court and (ii) the Office of the U.S. Trustee pursuant to Section 1930(a) of title 28 of the United States Code, as determined by agreement of the U.S. Trustee, the DIP Lenders and the Debtors or by final order of the Court, and (b) up to $750,000 of allowed and unpaid fees and expenses, (regardless of when such fees and expenses become allowed by order of the Bankruptcy Court but consistent with the Budget) of professionals retained by order of the Bankruptcy Court, incurred after the occurrence of a Carve-Out Event (as defined below), and (c) allowed, accrued and unpaid fees and out-of-pocket expenses (regardless of when such fees and expenses become allowed by order of the Bankruptcy Court) of professionals retained by order of the Bankruptcy Court  (or whose application for retention is then pending provided such application is ultimately approved), incurred on or prior to the occurrence of a Carve-Out Event and that are consistent with the Budget.  For the purposes hereof, a "Carve-Out Event" shall occur upon the occurrence and during the continuance of an Event of Default and upon delivery of a written notice thereof by the DIP Agent or any DIP Lender to the Debtors (a "Carve-Out Notice").  So long as no Carve-Out Event shall have occurred and be continuing, the Carve-Out shall not be reduced by the payment of fees, expenses and disbursements of professionals retained by order of this Court allowed by this Court and payable under Sections 328, 330 and 331 of the Bankruptcy Code, which allowed fees, expenses and disbursements shall be paid in accordance with and subject to the Budget.  Notwithstanding anything herein to the contrary, the Debtors shall first direct all professionals subject to the Carve-Out to fully utilize the retainers held by such professionals to pay allowed fees and

16

expenses comprising the Carve-Out prior to utilizing any DIP Collateral or Prepetition Collateral or proceeds of either that secure the obligations arising under the DIP Documents, the Prepetition Documents or any Adequate Protection Obligations owed to the Prepetition Lenders.  Upon the delivery of a Carve-Out Notice, the right of the Debtors to pay professional fees incurred under clause (b) above without reduction of the Carve-Out in clause (b) above shall terminate and upon receipt of such notice, the Debtors shall provide immediate notice by facsimile and email to all retained professionals informing them that a Carve-Out Event has occurred and that the Debtors' ability to pay professionals is subject to the Carve-Out; provided that (A) the Carve-Out shall not be available to pay any professional fees and expenses incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders and (B) nothing in this Order shall impair the right of any party to object to the reasonableness of any such fees or expenses to be paid by the Debtors' estates.  A waiver of an Event of Default triggering a Carve-Out Event shall constitute the cancellation of such Carve-Out Event allowing the Debtors to pay compensation and reimbursement of expenses authorized to be paid under Sections 330 and 331 of the Bankruptcy Code or otherwise pursuant to an order of the Bankruptcy Court, as the same may be due and payable, without reducing the Carve-Out.

9.      *DIP Liens*.  As security for the DIP Obligations as authorized hereunder, effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Agent of any property, the following security interests and liens are hereby granted by the Debtors to the DIP Agent, for itself and the benefit of the DIP Lenders (all

property of the Debtors identified in clauses (a), (b) and (c) below being collectively referred to as the "DIP Collateral"), subject and subordinate only to the Carve-Out (all such liens and security interests granted to the DIP Agent pursuant to this Order, the "DIP Liens"):

    (a)    First Lien on Unencumbered Property. Pursuant to Section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority lien on, and security interest in, all tangible and intangible prepetition and postpetition property of the Debtors, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to either (i) valid, perfected and non-avoidable liens in existence at the time of the commencement of the Cases or (ii) valid liens in existence at the time of such commencement that are perfected subsequent to such commencement as permitted by Section 546(b) of the Bankruptcy Code (collectively, the "Unencumbered Property"); provided that such Unencumbered Property shall not include Avoidance Actions, but subject to entry of the Final Order, such Unencumbered Property shall include any proceeds or property recovered in respect of any Avoidance Actions.

    (b)    Liens Junior to Certain Existing Liens. Pursuant to Section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior lien on, and security interest in all tangible and intangible prepetition and postpetition property of the Debtors (other than the property described in paragraph 9(c) below, as to which the DIP Liens will have the priority as described in such paragraph 9(c)), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by Section 546(b) of the Bankruptcy Code (collectively, the "Non-Primed Liens"), which security interests and liens in

favor of the DIP Agent, for itself and the benefit of the DIP Lenders, shall be junior to the Non-Primed Liens.

(c)    <u>Liens Priming the Prepetition Liens</u>.  Pursuant to Section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority, senior priming lien on, and security interest in, all of the Debtors' Prepetition Collateral (whether now existing or hereafter acquired).  The DIP Liens on the Debtors' Prepetition Collateral shall be senior in all respects to (i) the Prepetition Liens (including without limitation the Adequate Protection Liens (as defined in paragraph 16(a) below)) on the Debtors' Prepetition Collateral, and (ii) all other liens and obligations secured by the Debtors' Prepetition Collateral on a junior basis to the Prepetition Liens, but shall be junior to any Non-Primed Liens on the Debtors' Prepetition Collateral.  The Prepetition Agent shall (x) turnover to the DIP Agent all possessory collateral constituting DIP Collateral held by the Prepetition Agent (the "Possessory Collateral") within two business days of entry of this Order, in which case the DIP Agent shall act as bailee on behalf of the Prepetition Agent for purposes of further perfection in the Possessory Collateral, (y) act as bailee on behalf of the DIP Agent for purposes of further perfection in the Possessory Collateral or (z) enter into such other arrangements with respect to the Possessory Collateral as may be reasonably agreed between the Prepetition Agent and the DIP Agent.

(d)    <u>Liens Senior to Certain Other Liens</u>.  The DIP Liens and the Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under Section 551 of the Bankruptcy Code, (B) any liens arising after the Petition Date, or (C) any lien of the DIP Loan Parties securing the Prepetition Obligations or (ii) subordinated to or made *pari passu* with any other lien or security interest under Sections 363 or 364 of the Bankruptcy Code or otherwise.

10.    *Remedies After an Event of Default*.  The automatic stay under Section 362 of the Bankruptcy Code is vacated and modified to the extent necessary to permit the DIP Agent and the DIP Lenders to exercise, (a) immediately upon the occurrence and during the continuance of an Event of Default, all rights and remedies under the DIP Documents, other than those rights and remedies against DIP Collateral, as provided in clause (b) below, and (b) upon the occurrence and during the continuance of an Event of Default, and the giving of five (5) Business Days' prior written notice (the "Waiting Period") to the Debtors (with a copy to counsel to the Debtors, counsel to the Committee (if any) and the U.S. Trustee), all rights and remedies against the DIP Collateral provided for in the DIP Documents and this Order (including, without limitation, the right to setoff monies of the Debtors in accounts maintained with the DIP Agent or any DIP Lender).  During the Waiting Period, the Debtors shall not use any Cash Collateral or DIP Loan proceeds to pay any expenses except those provided for in the Budget and necessary to preserve the Debtors' going concern value as pre-approved in writing by the DIP Lenders.  Nothing herein shall alter the burden of proof set forth in the applicable provisions of the Bankruptcy Code at any hearing on any request by the Debtors or other party in interest to re-impose or continue the automatic stay under Bankruptcy Code Section 362(a), use Cash Collateral or to obtain any other injunctive relief.  In no event shall the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or Prepetition Collateral, including Cash Collateral.  The DIP Agent's or any DIP Lender's delay or failure to exercise rights and remedies under the DIP Documents or this Order shall not constitute a waiver of the DIP Agent's or any DIP Lender's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP

Agreement.

11.    *Application of Collateral Proceeds.*  To the extent required by this Order and the DIP Documents, after the expiration of the Waiting Period, the Debtors are hereby authorized and directed to remit to the DIP Agent, for the benefit of the DIP Lenders, one hundred percent (100%) of all collections on, and proceeds of, the DIP Collateral including but not limited to, all accounts receivable collections, proceeds of sales of intellectual property inventory, equipment, fixed assets and any other assets, including sales in and outside the ordinary course of business, and all other cash or cash equivalents which shall at any time on or after the Petition Date come into the possession or control of the Debtors, or to which the Debtors shall become entitled at any time, and the automatic stay provisions Section 362 of the Bankruptcy Code are hereby modified to permit the DIP Agent and the DIP Lenders to retain and apply all collections, remittances, and proceeds of the DIP Collateral subject to and in accordance with this Order and the DIP Documents to the DIP Obligations in accordance with the provisions of the DIP Documents (including the Carve-Out).  After all DIP Obligations shall have indefeasibly been paid in full in cash and the expiration of the Waiting Period, the Debtors are hereby authorized and directed to remit to the Prepetition Lenders, one hundred percent (100%) of all collections on, and proceeds of, the Prepetition Collateral and, subject to entry of the Final Order, the proceeds of the Avoidance Actions including but not limited to, all accounts receivable collections, proceeds of sales of intellectual property, inventory, equipment, fixed assets and any other assets, including sales in and outside the ordinary course of business, and all other cash or cash equivalents which shall at any time on or after the Petition Date come into the possession or control of the Debtors, or to which the Debtors shall become entitled at any time, and the automatic stay provisions of Section 362 of the Bankruptcy Code are hereby modified to permit

the Prepetition Lenders to retain and apply all collections, remittances, and proceeds of the Prepetition Collateral and the Avoidance Actions subject to and in accordance with this Order and the Prepetition Documents to the Prepetition Obligations in accordance with the provisions of the Prepetition Documents (including the Carve-Out).  Until all DIP Obligations have been paid in full in cash and all Commitments have been terminated, the Prepetition Agent and the Prepetition Lenders shall turn over any and all proceeds of DIP Collateral, Prepetition Collateral or amounts otherwise received on account the DIP Collateral or the Prepetition Collateral to the DIP Agent (for the benefit of the DIP Lenders).  Upon closing of any Sale[8], if the Stalking Horse Purchaser is not the Successful Bidder, the proceeds of the Sale shall be paid by the Successful Bidder as follows: (a) first, to pay the outstanding obligations under the DIP Agreement in full, (b) second, to pay the Expense Reimbursement in full (to the extent the Expense Reimbursement has not been paid in full prior to the consummation of the Sale in accordance with the terms of the Stalking Horse Agreement), (c) third, to pay the obligations outstanding under the Prepetition Credit Agreement until paid in full and (d) fourth, to the MMBU Debtors for distribution by the MMBU Debtors at the time of closing of the Sale as provided in the Successful Bidder's Asset Purchase Agreement.

12.     *Limitation on Charging Expenses Against Collateral*.  Subject to entry of the Final Order, except to the extent of the Carve-Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral or the Prepetition Collateral, as the case may be, pursuant to Sections 105 and 506(c) of the Bankruptcy Code or any similar principle of law.

---

[8]     Capitalized terms used but not otherwise defined in this sentence shall have the meanings ascribed to them in the Bid Procedures Motion.

13.     *Limitations under Section 552(b) of the Bankruptcy Code.*  The Prepetition Agent and the Prepetition Lenders shall be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code and, subject to entry of the Final Order, the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Agent and the Prepetition Lenders with respect to (i) proceeds, products, offspring or profits of any of the Prepetition Collateral, including the Cash Collateral or (ii) the extension of the Adequate Protection Liens to cover proceeds of the Prepetition Collateral.

14.     *Payments Free and Clear.*  Any and all payments or proceeds remitted to the DIP Lenders or the DIP Agent on behalf of the DIP Lenders or (except as provided in paragraph 20 of this Order) to the Prepetition Agent on behalf of the Prepetition Lenders pursuant to the provisions of this Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability , subject to the challenge rights in paragraph 20 of this Order.

15.     *The Cash Collateral.*  Substantially all of the Debtors' cash, including without limitation, all cash and other amounts on deposit or maintained by the Debtors in any account or accounts with the Prepetition Agent or any Prepetition Lender and any cash proceeds of the disposition of any Prepetition Collateral constitute proceeds of the Prepetition Collateral and, therefore, are cash collateral of the Prepetition Lenders within the meaning of Section 363(a) of the Bankruptcy Code (the "Cash Collateral").

16.     *Adequate Protection.*  The Prepetition Lenders and the Prepetition Agent for the benefit of the Prepetition Lenders are entitled, pursuant to Sections 361, 363(c)(2), 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate diminution in value

of their interests in the Prepetition Collateral, including without limitation, any such diminution on account of (i) depreciation, physical deterioration, use, sale, loss, or decline in market value, (ii) the granting of the DIP Liens, (iii) the Debtors' use of Cash Collateral and other Prepetition Collateral and (iv) the imposition of the automatic stay, pursuant to Section 362 of the Bankruptcy Code (such diminution in value, the "Adequate Protection Obligations").  As adequate protection, the Prepetition Lenders and the Prepetition Agent for the benefit of the Prepetition Lenders are hereby granted the following:

      (a)    Adequate Protection Liens.  As security for the payment of the Adequate Protection Obligations, the Prepetition Lenders and the Prepetition Agent for the benefit of the Prepetition Lenders are hereby granted (effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statements or other agreements) a valid, perfected replacement security interest in and lien on all of the DIP Collateral (the "Adequate Protection Liens"), subject and subordinate only to (i) the DIP Liens, (ii) the Carve-Out and (iii) the Non-Primed Liens; provided that in connection with any successful challenge (by final order after due notice and a hearing) of the Prepetition Liens pursuant to paragraph 20 of this Order, the Court shall fashion an appropriate remedy with respect to the Adequate Protection Liens after hearing from parties in interest.

      (b)    Section 507(b) Claims.  The Adequate Protection Obligations shall constitute superpriority claims as provided in Section 507(b) of the Bankruptcy Code (the "507(b) Claims"), with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, Sections 326, 328, 330, 331 and 726 of the Bankruptcy Code, subject and subordinate

only to (i) the Carve-Out and (ii) the Superpriority Claims granted in respect of the DIP Obligations. Except to the extent expressly set forth in this Order, the Prepetition Agent and the Prepetition Lenders shall not receive or retain any payments, property or other amounts in respect of the 507(b) Claims unless and until all DIP Obligations shall have indefeasibly been paid in full in cash.

(c)      Interest, Fees and Expenses. The Debtors are authorized and directed to (a) immediately accrue, as adequate protection to the Prepetition Lenders, an amount equal to all accrued and unpaid interest on the loans constituting Prepetition Obligations at the non-default LIBOR-based rate under the Prepetition Credit Agreement and (b) on the last Business Day of each calendar month after the entry of this Order, accrue, as adequate protection to the Prepetition Lenders an amount equal to all accrued and unpaid interest on the loans constituting Prepetition Obligations at the applicable non-default LIBOR-based rate set forth in the Prepetition Documents. As additional adequate protection, the Debtors shall also pay the reasonable and documented expenses of (a) the Prepetition Lenders including, without limitation, the reasonable and documented fees and expenses of the Prepetition Lenders' counsel, local counsel, consultants and advisors, and (b) the Prepetition Agent and its counsel's reasonable and documented fees and expenses. None of the fees and expenses payable pursuant to this paragraph 16(c) shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto. The Debtors shall pay the reasonable and documented fees and expenses provided for in this paragraph 16(c) within ten (10) days following receipt of invoices therefor by the Debtors, the counsel for the Committee (if any) and the U.S. Trustee (attention: Benjamin A. Hackman, Esq.),

provided that, upon any objection to the reasonableness of such fees, the Debtors shall pay all amounts that are not the subject of such objection within the ten (10) day period and shall pay the balance following the resolution of such objection or upon an order of the Court.

      (d)    Sale Proceeds Limitations. Except in accordance with the Bidding Procedures Order[9] and the DIP Documents, the Debtors shall not sell, lease, transfer or otherwise dispose of their interest in the Prepetition Collateral or the DIP Collateral , or seek authority of this Court to do any of the foregoing, without the prior written consent of the DIP Lenders. In the event of any sale, lease, transfer, license, or other disposition of property of the Debtors that constitutes Prepetition Collateral or DIP Collateral outside the ordinary course of business (to the extent permitted by this Order, the DIP Documents and the Bidding Procedures Order), the Debtors are authorized and directed, without further notice or order of this Court, subject to the rights and reservations set forth in paragraph 20 of this Order, to promptly pay 100% of the net proceeds (including cash or other forms of consideration) resulting therefrom to the DIP Agent for the benefit of the DIP Lenders and after the payment in full of all DIP Obligation, to the Prepetition Agent for the benefit of the Prepetition Lenders. Except to the extent expressly set forth in this Order, the Prepetition Agent and the Prepetition Lenders shall not receive or retain any payments, property or other amounts pursuant to this paragraph 16(d) unless and until all DIP Obligations shall have indefeasibly been paid in full in cash.

      (e)    Information and Other Covenants. The Debtors shall comply with the reporting requirements set forth in the DIP Agreement and Sections 6.01, 6.02, 6.11 and 6.15of the Prepetition Credit Agreement, together with such additional information as the Prepetition Lenders may reasonably request from time to time.

---

[9]   As defined in the Bid Procedures Motion.

(f)      Credit Bidding.  Without limiting the rights set forth in paragraph 20, the Prepetition Lenders and the DIP Lenders shall have the right to "credit bid" all or a portion of the Prepetition Obligations and the DIP Obligations in connection with any sale of the Prepetition Collateral and the DIP Collateral, including without limitation, any sale pursuant to Section 363 of the Bankruptcy Code or included as part of any reorganization plan subject to confirmation under Section 1129(b)(2)(A)(ii)-(iii) of the Bankruptcy Code or otherwise without the need for further order authorizing the same.

17.    *Reservation of Rights of Prepetition Lenders.*  The Prepetition Lenders consent to the adequate protection on the terms and conditions set forth herein.  Notwithstanding any other provision hereof, the grant of adequate protection to the Prepetition Lenders and the Prepetition Agent for the benefit of the Prepetition Lenders pursuant hereto is without prejudice to the right of the Prepetition Agent, with the consent of the Prepetition Lenders, to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection.  The Prepetition Lenders and the Prepetition Agent acknowledge that the DIP Liens related to the DIP Term Loan are senior to the Prepetition Liens securing the Prepetition Obligations of the Non-Debtor Borrowers.  Except as expressly provided herein, nothing contained in this Order (including without limitation, the authorization to use the Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to the Prepetition Lenders.  The consent of the Prepetition Lenders to the priming of the Prepetition Liens by the DIP Liens and the Carve-Out (a) is limited to the DIP Loans and the Carve-Out and (b) does not constitute, and shall not be construed as constituting, an acknowledgement or stipulation by the Prepetition Lenders that, absent such consent, their interests in the Prepetition Collateral would be adequately protected pursuant to this Order.

18.    *Perfection of the DIP Liens and Adequate Protection Liens.*

(a)    The DIP Lenders and the Prepetition Lenders and their respective agents are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate or provide further notice of perfection of the DIP Liens and the Adequate Protection Liens granted to them under this Order.  Whether or not the DIP Lenders or the Prepetition Lenders or their respective agents shall, in their respective sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the DIP Liens and the Adequate Protection Liens, such DIP Liens and the Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of this Order.

(b)    A certified copy of this Order may, in the discretion of the DIP Lenders and the Prepetition Lenders and their respective agents, as the case may be, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording.

(c)    The Debtors shall execute and deliver to the DIP Lenders and the Prepetition Lenders or their respective agents, as the case may be, all such agreements, financing statements, instruments and other documents as the DIP Agent or the Prepetition Agent, as the case may be, may reasonably request to evidence, confirm, validate, provide further notice of perfection or perfect the DIP Liens and the Adequate Protection Liens.

(d)    Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other DIP Collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code, and any such provision shall have no force and effect with respect to the granting of the DIP Liens or the Adequate Protection Liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor in favor of the DIP Lenders or the Prepetition Lenders in accordance with the terms of the DIP Documents or this Order.

19.    *Preservation of Rights Granted Under this Order.*

(a)    No claim or lien (other than the DIP Liens) having a priority senior to or *pari passu* with those granted by this Order to the DIP Lenders or the Prepetition Lenders shall be granted or allowed while any portion of the DIP Obligations, the Prepetition Obligations and the DIP Liens and the Adequate Protection Obligations remain outstanding, and the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under Section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest, whether under Section 364(d) of the Bankruptcy Code or otherwise.

(b)    Unless all DIP Obligations, Prepetition Obligations and Adequate Protection Obligations shall have been indefeasibly paid in full in cash, in the case of clause (i) below, the Debtors shall not seek, and in the case clauses (i) and (ii) below, it shall constitute an Event of Default under the DIP Agreement and a termination of the right to use the Cash

Collateral if any of the Debtors seeks, or if there is entered, (i) any modification of this Order without the prior written consent of the DIP Lenders and the Prepetition Lenders, as applicable, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Lenders or the Prepetition Lenders, or (ii) an order converting or dismissing any of the Cases.

        (c)     If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall, to the extent provided in Sections 363(m) and 364(e) of the Bankruptcy Code, not affect (i) the validity, priority or enforceability of any DIP Obligations, Prepetition Obligations or the Adequate Protection Obligations incurred prior to the effective date of such reversal, stay, modification or vacatur or (ii) the validity, priority or enforceability of the DIP Liens or the Adequate Protection Liens.  Notwithstanding any such reversal, stay, modification or vacatur, any use of the Cash Collateral, any DIP Obligations or any Adequate Protection Obligations incurred by the Debtors to the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders, as the case may be, prior to the effective date of such reversal, stay, modification or vacatur shall, to the extent provided in Sections 363(m) and 364(e) of the Bankruptcy Code, be governed in all respects by the original provisions of this Order, and the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders shall be entitled to all of the rights, remedies, privileges and benefits granted in Section 364(e) of the Bankruptcy Code, this Order, the DIP Documents, the Prepetition Documents, the Adequate Protection Obligations and uses of the Cash Collateral.

        (d)     Except as expressly provided in this Order or in the DIP Documents, the DIP Liens, the Superpriority Claims, the Adequate Protection Liens, the 507(b) Claims and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition Agent and the

Prepetition Lenders granted by this Order and the DIP Documents shall survive, and shall not be

modified, impaired or discharged by (i) the entry of the Sale Order or the closing of the MMBU

Sale, (ii) the entry of an order converting any of the Cases to cases under Chapter 7 of the

Bankruptcy Code, dismissing any of the Cases, or (iii) the entry of an order confirming a plan of

reorganization in any of the Cases and, pursuant to Section 1141(d)(4) of the Bankruptcy Code,

the Debtors have waived any discharge as to any remaining DIP Obligations or Adequate

Protection Obligations.  The terms and provisions of this Order and the DIP Documents shall

continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in

any superseding Chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Adequate

Protection Liens, the DIP Obligations, the Adequate Protection Obligations, the Superpriority

Claims, the Section 507(b) Claims, the other administrative claims granted pursuant to this

Order, and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition

Agent and the Prepetition Lenders granted by this Order and the DIP Documents shall continue

in full force and effect until all DIP Obligations are indefeasibly paid in full in cash and all

Adequate Protection Obligations are indefeasibly paid in full in cash or otherwise satisfied in

accordance with paragraph 16(b).

20.     *Effect of Stipulations on Third Parties*.  The stipulations and admissions contained

in this Order, including without limitation, in paragraphs 4 and 15 of this Order, shall be binding

upon the Debtors, the Parent and its subsidiaries under all circumstances.  The stipulations and

admissions contained in this Order, including without limitation, in paragraphs 4 and 15 of this

Order, shall be binding upon all parties in interest, including, without limitation, the Committee

(if any), under all circumstances and for all purposes, except solely to the extent as provided in

this Order unless (a) any party-in-interest (including the Committee (if any)) with standing to do

so has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including without limitation, in this paragraph 20) by no later than the later of seventy-five (75) days from the entry of this Order and sixty (60) days from the date of the formation of the Committee (if any) (such date, the "Investigation Deadline"); provided that any such deadline is subject to extension as (x) agreed in writing by the Prepetition Lenders, (y) may be specified by this Court for cause shown, (i) challenging the validity, enforceability, priority or extent of the Debtors' Prepetition Obligations or the Prepetition Liens against the Debtors or (ii) otherwise asserting or prosecuting any Avoidance Actions or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Claims and Defenses") against any of the Prepetition Agent, the Prepetition Lenders or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors in connection with any matter related to the Debtors' Prepetition Obligations, the Prepetition Liens against the Debtors or the Prepetition Collateral of the Debtors and (b) an order is entered and becomes final in favor of the plaintiff sustaining any such challenge or claim in any such timely filed adversary proceeding or contested matter; provided that, as to the Debtors, the Parent and its subsidiaries, all such Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition Date. If no such adversary proceeding or contested matter is timely filed in respect of the Debtors' Prepetition Obligations or the Prepetition Liens against the Debtors (x) the Prepetition Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent Chapter 7 case, (y) the Prepetition Liens shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in paragraph 4(b), not subject to defense, counterclaim, recharacterization, subordination or avoidance and (z) the

Prepetition Obligations, the Prepetition Agent and the Prepetition Lenders, as the case may be, and the Prepetition Liens shall not be subject to any other or further challenge by any party-in-interest (including the Committee (if any), any estate representative or a Chapter 7 or 11 trustee appointed or elected for any of the Debtors).  If any such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained in paragraphs 4 and 15 of this Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on all parties-in-interest (including the Committee (if any)), except as to any such findings and admissions that were expressly and successfully challenged in such adversary proceeding or contested matter.  Notwithstanding anything to the contrary in this paragraph 20, if the Cases are converted to cases under Chapter 7 of the Bankruptcy Code or a Chapter 11 trustee is appointed in these Cases prior to the Investigation Deadline, the Chapter 7 trustee or the Chapter 11 trustee, as applicable, may, within 75 days from the date of his or her appointment, and subject to the terms of this paragraph 20, challenge the Debtors' Prepetition Obligations and the Prepetition Liens against the Debtors or assert or prosecute Claims or Defenses as if such Chapter 7 trustee were the Committee.  For the avoidance of doubt, any such trustee appointed or elected in these cases before the expiration of the Investigation Period shall, until the expiration of the Investigation Deadline, be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgements, admissions, confirmations, stipulations and waivers of the Debtors in this Order.

21.   *Limitation on Use of the DIP Loans, the DIP Collateral, Cash Collateral and Prepetition Collateral.*  The Debtors shall use the DIP Loans and the Prepetition Collateral, including the Cash Collateral, solely as provided in this Order, the Budget and the DIP

Documents. Notwithstanding anything herein or in any other order of this Court to the contrary, neither the DIP Loans, the DIP Collateral, the Prepetition Collateral, including the Cash Collateral, nor the Carve-Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Documents, the Prepetition Documents or the liens or claims granted under this Order, the DIP Documents or Prepetition Documents, (b) assert any Claims and Defenses or any other causes of action against the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the DIP Agent's or the Prepetition Agent's assertion, enforcement or realization on the Prepetition Collateral or the DIP Collateral in accordance with the DIP Documents, the Prepetition Documents or this Order, (d) seek to modify any of the rights granted to the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders hereunder or under the DIP Documents or the Prepetition Documents, in the case of each of the foregoing clauses (a) through (d), without such party's prior written consent or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of this Court and (ii) permitted under the DIP Documents and the Budget; provided that, notwithstanding anything to the contrary herein, no more than an aggregate of $50,000 of the Prepetition Collateral, including the Cash Collateral, the DIP Loans, the DIP Collateral or the Carve-Out may be used by the Committee (if any) to investigate the validity, enforceability or priority of the Debtors' Prepetition Obligations or Prepetition Liens against the Debtors, or investigate any Claims and Defenses or other causes action against the Prepetition Agent and the Prepetition Lenders related to the Debtors' Prepetition Obligations or Prepetition Liens against the Debtors.

22. *Insurance*.  To the extent the Prepetition Agent is listed as loss payee under the Debtors' insurance policies, the DIP Agent is also deemed to be the loss payee under the Debtors' insurance policies and shall act in that capacity and subject to the terms of the DIP Documents, distribute any proceeds recovered or received in respect of any such insurance policies, first, to the payment in full of the DIP Obligations, and second, to the payment of the Prepetition Obligations

23. *Master Proof of Claim*.

(a)    To facilitate the processing of claims, to ease the burden upon this Court and to reduce any unnecessary expense to the Debtors' estates, the Prepetition Agent is authorized to file a single master proof of claim in the Case of Velti, Inc. on behalf of itself and the Prepetition Lenders on account of their claims arising under the Prepetition Documents and hereunder against all Debtors (a "Master Proof of Claim").

(b)    Upon filing of the applicable Master Proof of Claim against Velti, Inc., the Prepetition Agent and each Prepetition Lender, and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth therein in respect of their claims against each of the Debtors (other than those Debtors which are not a party to the Prepetition Documents) arising under the Prepetition Documents or under this Order and the claims of the Prepetition Agent and each Prepetition Lender (and each of their respective successors and assigns) named in the applicable Master Proof of Claim shall be allowed or disallowed as if each such entity had filed a separate proof of claim in each of the Cases in the amount set forth in the applicable Master Proof of Claim; provided that the Prepetition Agent, may, but shall not be required to, amend the applicable Master Proof of Claim from time to time to, among other things, reflect a change in the holders of the claims set forth therein or a

reallocation among such holders of the claims asserted therein resulting from any transfer of any such claims.

(c)    The provisions set forth in paragraphs (a) and (b) above and the Master Proofs of Claim are intended solely for the purpose of administrative convenience and, except to the extent set forth herein or therein, neither the provisions of this paragraph nor the Master Proofs of Claim shall affect the substantive rights of the Debtors, the Prepetition Agent, the Prepetition Lenders or any other party in interest or their respective successors in interest, including without limitation, the right of each Prepetition Lender (or its successor in interest), to vote separately on any plan of reorganization proposed in the Cases.

24.    *Order Governs.*  Except as specifically amended, supplemented or otherwise modified by this Order, in the event of any inconsistency between the provisions of this Order and the DIP Documents, the provisions of this Order shall govern.  Notwithstanding the provisions of this Order and the DIP Documents, nothing herein or therein shall be deemed to amend, modify or reduce the Prepetition Obligations owed by the Loan Parties in the full amount outstanding as of the Petition Date.

25.    *Binding Effect; Successors and Assigns.*  Without limiting the provisions of paragraph 20, the DIP Documents and the provisions of this Order, including all findings herein, shall be binding upon all parties-in-interest in the Cases, including without limitation, the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders and the Debtors and their respective successors and assigns (including any Chapter 7 or Chapter 11 trustee hereinafter appointed or elected for any of the Debtors, an examiner with expanded powers appointed pursuant to Section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the

Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders and the Debtors and their respective successors and assigns; provided that, except to the extent expressly set forth in this Order, the DIP Agent, the Prepetition Agent, the DIP Lenders and the Prepetition Lenders shall have no obligation to permit the use of the DIP Loans or the Cash Collateral, as applicable, or extend any financing to any Chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

26.    *Limitation of Liability.*  Subject to entry of the Final Order, in determining to make any loan under the DIP Agreement, permitting the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Order, the DIP Documents or the Prepetition Documents, the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute).  Furthermore, subject to entry of the Final Order, nothing in this Order, the DIP Documents or the Prepetition Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

27.    *Effectiveness.*  This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of effectiveness of this Order.

28.    *Final Hearing.*  The Final Hearing is scheduled for ~~November~~ December 2, 2013 at 9:30

a.m. (Eastern Standard Time) before this Court.

29.    *Final Hearing Notice.*  The Debtors shall promptly mail copies of this Order (which shall constitute adequate notice of the hearing on the Final Order) to the parties having been given notice of the Interim Hearing, and to the Notice Parties,  the Committee (if any) after the same has been appointed, or Committee counsel, if the same shall have been appointed, the applicable state and federal taxing authorities and the Delaware Attorney General.  Any party-in-interest objecting to the relief sought at the Final Hearing shall serve and file written objections; which objections shall be served upon (a) DLA Pipper, 203 North LaSalle Street, Suite 1900, Chicago, Illinois 60601-1293, Attention: Richard Chesley, Esq., attorney for the Debtors, (b) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017, Attention: Sandy Qusba, Esq. and Hyang-Sook Lee, Esq., attorneys for the DIP Lenders and the Prepetition Lenders, (c) the Office of the U.S. Trustee for the District of Delaware and (d) counsel to the Committee (if any), and shall be filed with the Clerk of the United States Bankruptcy Court, District of Delaware, in each case to allow actual receipt by the foregoing no later than November 25, 2013 at 4:00 p.m. (Eastern Standard Time).

30.    *Continuing Jurisdiction.* The Court shall retain jurisdiction with respect to all matters arising from and related to the implementation, interpretation, and enforcement from this Order.


Dated:    November 5, 2013
          Wilmington, Delaware

_____
THE HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE